**NEW YORK AND CUBA MAIL STEAM-SHIP CO.**

v.

**UNITED STATES.**

No. 132–55.

United States Court of Claims.

May 6, 1959.

J. Franklin Fort, Washington, D. C, for plaintiff. Kominers & Fort, Washington, D. C., were on the briefs.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff sues to recover $7,-200 which the Government's agency, the United States Maritime Commission, charged it for "desirable features" on two ships which the plaintiff bought from the Maritime Commission. Our decision in A. H. Bull Steamship Co. v. United States, 108 F.Supp. 95, 123 Ct.Cl. 520, was to the effect that, in circumstances such as those here present, the "desirable features" charge was improper. On the merits, then, the plaintiff is entitled to recover if the merits are reached.

The Government pleads the statute of limitations, and also a counterclaim. We consider first the question of the statute of limitations.

In August, 1943 the plaintiff purchased the two ships in question, the Cape Chalmers and the Cape Alexander, from the Maritime Commission. It paid some $1,450,000 for each ship, partly in cash, the balance secured by a mortgage which called for annual payments of principal and interest. As soon as the ships were delivered to the plaintiff in 1943, they were chartered back by the plaintiff to the Government for the duration of the war.

In 1946 the Government had a surplus of merchant ships which it had acquired during the war and which it wanted to get into private ownership and operation. The Merchant Ship Sales Act of 1946, cited and discussed in the Bull case, supra, laid down rules and formulas for the sale of such ships. Pursuant to this statute, the Maritime Commission was to set a "statutory sale price" for the various types of available ships. The prices so set were considerably below the cost of the ships to the Government.

The Merchant Ship Sales Act of 1946, in addition to making provision for the sale at fixed prices of ships which the Government owned in 1946, provided also in its section 9, 60 Stat. 41, 50 U.S. C.A.Appendix, § 1742, that an owner of a ship which he had purchased from the Maritime Commission, and which had been delivered to him in 1941 or thereafter, should, if he applied therefor, be entitled to a retroactive adjustment of the price which he had paid for his ship. The adjustment so provided for would, in general, give such a prior purchaser the same advantages in price and terms of sale as if he had bought a ship of the same type and age from the Commission on March 8, 1946, the date of the enactment of the Ship Sales Act.

The price of ships like those of the plaintiff, as set pursuant to the 1946 Act, was $912,859. As we have seen, the plaintiff in 1943 had paid $1,450,000 for each of its ships. Thus there was a difference of some $537,000 on each ship. The plaintiff promptly filed its application for the adjustment to which the 1946 Act entitled it.

The adjustment which had to be computed by the applicant, and recomputed and approved by the Commission, involved complicated accounting, and took time. If the applicant had paid on the original purchase of the ship more than 25 percent of the 1946 statutory sales price of the ship, the excess was to be credited to it. The existing mortgage, if any, was to be readjusted. The applicant was to be credited with interest on the excess of the original purchase price over the adjusted price. The applicant was to credit the Commission with any amounts paid by the Government to the applicant as charter hire for use of the ship. The applicant's Federal taxes were to be recomputed with regard to depreciation, amortization, interest, etc., affected by the retroactive change of the status, and credit to the applicant or the Commission was to be given. Then all the mutual credits were to be considered and payment made to or by the applicant accordingly.

In the plaintiff's application for the adjustment of its purchase, filed in May 1946, it set the new purchase price of each of the ships at $912,859, the "floor price" of ships of that type and age, under the formulas of the 1946 Act. On November 23, 1948, the Commission wrote the plaintiff a letter, in general agreeing with the plaintiff's computations, but adding $3,600 to the price of each ship, on account of desirable features. The letter said that the proposed adjustments, detailed in schedules attached to the letter, were made "before taking into account applicable tax credits." On December 7, 1948, the plaintiff wrote the Commission that the Commission's computations "are acceptable to us," but pointing out that it had made additional payments on its mortgage which were not taken into account in the figures used in the computations.

The Commission's staff then prepared a memorandum showing the adjustments and presented it to the Commission. On December 20, 1948, the Commission approved the proposed adjustments subject to referral to the Bureau of Internal Revenue for a determination of tax credits. On December 22, 1948, the Commission wrote the plaintiff that it had approved the adjustments and said:

"The case will now be referred to the Bureau of Internal Revenue for their determination of the applicable tax credits which will be certified to the United States Maritime Commission after which all adjustments

including the preparation and execution of a proper adjustment agreement will be consummated."

On July 21, 1949, the Commission wrote the plaintiff advising it of the amount of the net tax overpayment determined by the Bureau of Internal Revenue and saying that the data had been referred to the Commission's Bureau of Law "to effectuate the Commission action of December 20, 1948" and that "you should hear from them in the not too distant future." On October 26, 1949, the plaintiff inquired as to the status of the case. On November 3, 1949, the Commission replied that a contract would be prepared and tendered to the plaintiff within the next few days. The contract was so prepared and tendered, and was executed by the plaintiff and returned to the Commission on January 5, 1950. The adjustment agreed to in the contract charged the plaintiff with the "desirable features" items amounting to $7,200, for the recovery of which the plaintiff sues.

The plaintiff filed the instant suit on March 30, 1955. The Government, as we have said, pleads the statute of limitations. We must determine when the plaintiff's cause of action to recover the $7,200 "first accrued." The Government says it accrued in 1946 when the plaintiff filed its application for an adjustment giving it the benefits of the 1946 Act. If the plaintiff had sued then, even in a court which had the widest possible jurisdiction as to the kinds of relief which it could award, what relief could the plaintiff have demanded? It could only have asserted that, in making the necessary computations under section 9, the Commission might unlawfully charge the plaintiff with desirable features, and that that possibility should be foreclosed by the decree of the court. No cause of action accrued to the plaintiff in 1946.

The Government says that, in any event, the plaintiff's cause of action accrued in 1948 when the Commission wrote the plaintiff a letter adding the desirable features charge to the adjustment which had been proposed by the plaintiff, but saying that the necessary tax adjustments would still have to be made by the Bureau of Internal Revenue.

If the plaintiff had brought suit after the 1948 events, it could only have asserted that, if the Commission, by the time it received its report from the Bureau of Internal Revenue, and had prepared a contract containing the adjustments which it regarded as lawful, should still be of the opinion that desirable features were properly chargeable to the plaintiff, and if it should include them in its tendered contract, the plaintiff would be threatened with harm. The relief requested would have been a decree foreclosing the possibility that the plaintiff might, in the future, be so threatened. In such a suit the plaintiff would have had to reserve the right to come to the court again if and when an incorrect adjustment of its taxes should be included in the contract which should be tendered to it. No cause of action accrued to the plaintiff in 1948.

The events of 1949 and 1950 were within the period of the statute of limitations. The plaintiff's suit was, therefore, filed in time.

The plaintiff was, as was shown by its letter of December 7, 1948, completely unaware of its right not to be charged for the desirable features. Though some others in the industry were objecting to that charge, the plaintiff did not object to it until after the decision of this court in the Bull case, supra. The Government does not claim any advantage from the plaintiff's acquiescence in the charge. And one's ignorance of his rights neither accelerates nor tolls the running of the statute of limitations.

### The Counterclaim

The Government asserts that the Maritime Commission, in computing the credits which it allowed the plaintiff in its adjustment, erroneously gave the plaintiff too much credit. It says that one instance of such a mistake was in counting money which the plaintiff, in the 1943 purchase, had paid to the Government to reimburse the Govern-

ment for interest paid by it to the shipbuilder while the ships were under construction, as a part of the 1943 purchase price of the ships. The Government says that these amounts should have been treated only as interest paid by the plaintiff, like the interest paid by the plaintiff to the Government on its mortgages, after the plaintiff took delivery of the ships in 1943.

The Maritime Commission in all such situations treated the interest accrued during the construction period as a part of the capital cost of the ship. We think that, as a matter of sound accounting practice, and of logic, that treatment was right.

Section 9 of the 1946 Act, in its subsection (b) giving detailed directions for the making of the adjustments, says:

> "Such adjustment shall be made, as hereinafter provided, by treating the vessel as if it were being sold to the applicant on the date of the enactment of this Act, and not before that time."

The date of the Act was March 8, 1946. As we have seen, the plaintiff filed its application for adjustment in May 1946. The adjustment was not finally computed and embodied in the adjustment contract until January 5, 1950. The plaintiff and the Commission, in their computations and in the agreed adjustment, credited the plaintiff with the amounts to which it was entitled to credit, as of March 8, 1946. That meant, of course, that those sums were credited as partial payments on the plaintiff's mortgages as of that date, and that interest accrued to the Government thereafter only on the thereby reduced balances of the mortgages. The Government says that the balances of principal should not have been reduced until the 1950 date when the adjustment was finally agreed to.

The Government's argument would distinguish, because of differences in the text, between different items in the list of adjustments, so far as their effective dates are concerned. This opinion is already too long, and the intricacies of this argument will not be discussed. The purpose of the statute seems to us quite plain. If the plaintiff had bought these used ships for the first time in 1946, the Government would have received in 1946, in cash, or in a mortgage, only the sales price of the used ships. Since the plaintiff had in 1943 paid, or given mortgages for the higher prices of the then new ships, and since such purchasers were, under section 9, to be treated like 1946 purchasers, we think Congress did not intend that such purchasers should go on, for several years after 1946, paying interest on the larger amounts which they had promised to pay in 1943.

The plaintiff says that, since the adjusted price which it was required to pay was excessive by the amount of the $7,200 which it was charged for desirable features, its mortgages should have been, but were not, reduced by that further amount as of March 8, 1946, and that it should recover, in addition to the $7,200, the interest which it paid on that amount from that date until the time when its mortgages were paid off. We think the plaintiff is right.

The Government's motion for summary judgment, and its counterclaim, are dismissed. The plaintiff's motion for summary judgment is granted. The amount of the plaintiff's judgment will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

BRYAN, District Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.