Whitaker, Judge,
delivered the opinion of the court:
American Export Lines, Inc., sues for operating-differential monies, admittedly due, in the sum of $22,594.84, which defendant has withheld as an offset against amounts which defendant claims are due it for the bareboat charter of its vessels. New York and Cuba Mail Steamship Company sues for amounts charged for “desirable features” on vessels sold it by the Maritime Commission. Following the decision of this court in New York and Cuba Mail Steamship Co. v. United States, 145 Ct. Cl. 652, the parties agreed that the amount due to be refunded on account of the amount charged for desirable features was $7,536.16, but defendant has withheld this amount, claiming the right to offset it against amounts it claims are due it for the bareboat charter of certain of its vessels by New York and Cuba Mail Steamship Company.
The principal controversy in these two cases arises out of counterclaims filed by defendant involving the amount of rental or charter hire due the United States under several contracts with plaintiffs for the bareboat charter of numerous Government-owned vessels.
Although the facts in each of the two cases vary as to dates, amounts, etc., the legal issues to be decided are identical and for that reason they will be disposed of in one opinion.
The United States asserts counterclaims against American Export in the estimated amount of $19,602,454.25, and against New York and Cuba Mail in the estimated amount of $5,317,724.76, which sums represent the amounts it claims are due it from each plaintiff, respectively, over and above the *204 amounts it has withheld from plaintiffs. In its counterclaims the Government asserts that, in violation of law, the Maritime Commission and plaintiffs agreed upon total charter hire rates lower than those required by statute, and that plaintiffs, accordingly, are indebted to the United States, not only for the unpaid portion of the contractual hire, which plaintiffs agreed to pay and have not paid, but also for the difference between the contractual hire and the larger hire which Congress allegedly required to be exacted for the use of the Government’s vessels.
Section 5 (b) of the Merchant Ship Sales Act of 1946 provided for a basic charter hire to be fixed at such rate as the Commission determined to be consistent with the policies of the Act, but at not less than 15 percent of the statutory sales price, except upon the vote of four members of the- Commission ; and it was further provided that, if the rate fixed by the Commission should differ from the rate specified, it could not be less than the world market charter rate for similar vessels for similar uses. Section 5 (c) of the Act provided that all charters made thereunder should incorporate the provisions of section 709(a) of the Merchant Marine Act of 1936, which provided for the payment of additional charter hire equal to one-half the cumulative net voyage profits in excess of a 10 per centum return on capital necessarily employed in the business of the chartered vessels.
Under the charter contracts, plaintiffs were charged a basic charter hire of 15 percent of the unadjusted statutory sales price of the chartered vessels and, in addition, it was agreed that plaintiffs should pay to defendant additional charter hire as follows:
[a] Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) not in excess of $100 per day — 50%.
[b] Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $100 per day but not in excess of $300 per day — 75% of such excess over $100 per day.
[c] Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $300 per day — 90% on such excess over $300 per day.
*205 In addition to amounts which defendant claims are due it as unpaid hire under the several contracts with plaintiffs, defendant now claims that the charter contracts did not provide for that charter hire which was required by section 5 (b) of the Merchant Ship Sales Act, since it was less than the prevailing world market charter rate for similar vessels for similar uses.
In their replies plaintiffs deny that any additional amounts are due defendant, either under the contracts as executed or under any contract required by statute. On the other hand, they say, they have paid a charter hire at a rate greater than that authorized by statute, in that the contract called for a basic charter hire of 15 percent of the unadjusted statutory sales price, whereas the statute required that the basic charter hire should be based upon the statutory sales price adjusted as of the date of the charter. Second, they say that the statute authorized an additional charter hire of no more than 50 percent of the cumulative net voyage profits, and that the Commission was without authority to charge the additional amounts of from 25 to 40 percent of the cumulative net voyage profits. Third, they allege that in determining net voyage profits, they should have been allowed to cumulate or offset losses and profits incurred during each calendar year against losses and profits in subsequent years, irrespective of the sequence in which such losses or profits occurred. Lastly, they allege that the requirement under the so-called “Foreign Trade Addendum”, that the year 1947 should be divided as of September 1 of that year so that early 1947 profits should be accounted for without deduction of the losses incurred during the latter part of 1947, was contrary to the statute.
Plaintiffs, therefore, allege that the rates charged under the contracts, and paid by them pursuant thereto, were in excess of the rates authorized by statute and, hence, they assert, by way of what they call “counterclaims” to defendant’s counterclaims, their demands for refund of the alleged overpayment of charter hire. Defendant has raised a question as to the jurisdiction of this court to entertain plaintiffs’ cross “counterclaims.” However, plaintiffs have agreed that in the event this court dismisses all of defendant’s counter *206 claims, their cross “counterclaims” should be dismissed without prejudice to their rights to later assert the same in an appropriate forum.
Plaintiffs have moved for summary judgment in both cases, to which defendant has filed cross motions for summary judgment in both cases. The issues which this court must decide are as follows:
1. Was the Commission authorized under section 5 of the Merchant Ship Sales Act of 1946, to fix a basic charter hire rate of 15 percent of the statutory sales price, or was it required to fix a rate which was not less than the prevailing world market rate for similar vessels for similar uses, when such world market rate was higher than 15 percent of the statutory sales price?
2. Was the Commission authorized under section 709(a) of the Merchant Marine Act of 1936, to charge additional charter hire on a sliding scale of 50,75 and 90 percent of the cumulative net voyage profits in excess of a 10 percent return on the charterers’ capital necessarily employed in the operation of the vessels, or was 50 percent the maximum rate which could be charged ?
(a) As a subsidiary question, was the additional charter hire in excess of 50 per cent of the cumulative net voyage profits a part of the basic charter hire under section 5(b) of the Merchant Ship Sales Act of 1946?
3. Are plaintiffs estopped from contesting the rates fixed by the charter contracts ?
Since we are of opinion that defendant is not entitled to recover on its counterclaims, we do not consider the other issues raised by plaintiffs’ cross counterclaims.
The first issue is the minimum amount of basic charter hire which is authorized by statute. The governing statute is section 5(b) of the Merchant Ship Sales Act of 1946, 60 Stat. 43, which provides as follows:
The charter hire for any vessel chartered under the provisions of this section shall be fixed by the Commission at such rate as the Commission determines to be consistent with the policies of this Act, but, except upon the affirmative vote of not less than four members of the Commission, such rate shall not be less than 15 per centum per annum of the statutory sales price (com *207 puted as of the date of charter). Except in the case of vessels having passenger accommodations for not less than eighty passengers, rates of charter hire fixed by the Commission on any war-built vessel which differ from the rate specified in this subsection shall not be less than the prevailing world market charter rates for similar vessels for similar use as determined by the Commission.
It will be noted that 50 App. U.S.C. § 1738(b) (1952 and 1958 Eds.) omits the following language which appears in the original statute:
* * * but, except upon the affirmative vote of not less than four members of the Commission, such rate shall not be less than 15 per centum per annum of the statutory sales price (computed as of the date of charter).
The authority cited by the codifiers for the omission of this clause is 1950 Eeorg. Plan No. 21. But it will be noted that this reorganization plan does not authorize the elimination of the words quoted above. The codifiers justify their elimination only by virtue of the fact that the Maritime Commission was abolished and its functions were transferred to the Secretary of Commerce. Since the sentence provided that the charter hire should be fixed at less than 15 per centum per annum only upon the affirmative vote of four members of the Commission, and since the Commission had been abolished, apparently the codifiers thought that the sentence was no longer in force and effect.
We think this was erroneous. The omitted sentence declares the policy of Congress relative to the amount of basic charter hire to be charged, except in exceptional circumstances. It was the clear purpose of Congress that the basic charter hire should not be fixed at less than 15 percent, unless it was clearly in the public interest that it be fixed at a lesser percentage. The codification should have retained an appropriate expression of this congressional purpose.
It is well settled that “the Code cannot prevail over the Statutes at Large when the two are inconsistent.” Stephan v. United States, 319 U.S. 423; Royer's, Inc., v. United States, 265 F. 2d 615. The provisions of the Code are merely prima facia evidence of the law. 1 U.S.C. § 204(a).
*208 Furthermore, the 1950 Reorganization Plan No. 21 was adopted after the charters had been executed and fully performed, except one charter in the New York and Cuba Mail Steamship Company case, and until its adoption there was no authority at all for the elimination of this clause.
Plaintiffs say that the basic charter hire was fixed in their contracts at 15 percent of the statutory sales price and since this rate did not differ from the 15 percent rate specified by section 5 (b), they are not liable to defendant for a greater rate. They say the requirement that the basic rate be fixed at not less than the prevailing world market rate applies only when the basic charter rate differed from the rate specified. On the other hand, defendant contends that the clause, “which differ from the rate specified in this subsection”, has reference only to a rate determined “to be consistent with the policies of this Act,” and it says that 15 percent of the sales price was inconsistent with the policy of the Act, which was to encourage the sale of ships rather than the charter thereof. It deduces therefrom, that the world market rate is the minimum rate authorized.
We think defendant’s position is without merit. By section 5 (b), Congress directed that the basic charter rate be fixed at not less than 15 percent, except under exceptional circumstances. By it, Congress declared its policy relative to basic charter rates. The second sentence of the section relative to world market charter rates is a limitation only on the power to fix the rate at less than 15 percent, even if four members of the Commission agree to such a rate. If they do fix it at less than 15 percent, this sentence directs them to fix it at not less than the prevailing world market charter rate. But, if the charter rate is fixed at 15 percent, as was done in these cases, then the direction for fixing the rates at not less than the prevailing world market charter rate has no application. It is only when the rate is different from 15 percent that the Commission is directed to fix the rate at not less than the prevailing world market charter rate. United States v. East Harbor Trading Corporation, et al., S.D.N.Y. Docket No. 60 Civ. 2362 (December 29, 1960) ; see also Dichman, Wright & Pugh, Inc. v. United States, 144 F. Supp. 922, 925.
*209 The defendant’s claim for the difference between the amounts specified in the charters as basic charter hire and the prevailing world market charter rate must be disallowed.
The second issue is whether the Commission was authorized to charge additional charter hire on a sliding scale of 50, 75, and 90 percent of the charterers’ excess profits from the business of the chartered vessels. Plaintiffs maintain that any additional charter hire in excess of 50 percent of their cumulative net voyage profits in excess of a 10 percent return on their invested capital was unauthorized. Defendant says, on the other hand, that the 50 percent share of the excess profits, which it was required by statute to collect, was only a minimum, and in no way was it prohibited from charging the larger rates. In the alternative, defendant contends that the additional hire in excess of 50 percent was charged as part of the basic charter hire under section 5(b) of the Merchant Ship Sales Act.
Section 5(c) incorporated in that Act the provisions of section 709 (a) of the Merchant Marine Act of 1936, 49 Stat. 2010, which provides as follows:
Every charter made by the Commission pursuant to the provisions of this title shall provide that whenever, at the end of any calendar year subsequent to the execution of such charter, the cumulative net voyage profits (after payment of the charter hire reserved in the charter and the payment of the charterer’s fair and reasonable overhead expenses applicable to the operation of the chartered vessels) shall exceed 10 per centum per annum on the charterer’s capital necessarily employed in the business of such chartered vessels, the charterer shall pay over to the Commission, as additional charter hire, one-half of such cumulative net voyage profit in excess of 10 per centum per annum: Provided, That the cumulative net profit so accounted for shall not be included in any calculation of cumulative net profit in subsequent years.
We think it is clear that under the provision quoted above, the Commission was without authority to raise or lower the 50 percent of the excess profits which plaintiffs were required to pay as additional charter hire. This 50 percent share is a maximum as well as a minimum, at least insofar as section 709(a) is concerned. Dichman, Wright & Pugh, Inc. v. *210 United States, supra; United States v. East Harbor Trading Corp., supra. That it was intended for the charterer to share fifty-fifty, no more and no less, is clearly apparent from the language of the statute.
However, defendant argues that the sliding scale for payment of profit in excess of 50 percent was inserted in the charter contracts pursuant to its authority under section 5 (b) of the Merchant Ship Sales Act of 1946, supra, to fix a rate of basic charter hire “consistent with the policies of this Act.”
This is contrary to the provisions of the charters. Clause E of one of the American Export Lines charters reads: (The other charters contain similar provisions.)
Clause E. Bate of Basic Charter Hire. Unless otherwise specially agreed, such rates as appear opposite the name of each vessel listed in Clause C(l) and such addenda as may be executed.
Clause C(l) says the “Basic Hire Per Calendar Month” is “15% per annum of either the unadjusted sales price or the floor price of the vessel, whichever is higher.” Then Clause 13, with reference to additional charter hire, reads:
Clause 13. Additional Charter Hire. If at the end of the calendar year 1946, or any subsequent calendar year or at the termination of this Agreement, the cumulative net voyage profit (after the payment of the basic charter hire hereinabove specified and payment of the Charterer’s fair and reasonable overhead expenses applicable to operation of the Vessels) shall exceed 10 per centum per annum on the Charterer’s capital necessarily employed in the business of the Vessels (all as hereinafter defined), the Charterer shall pay over to the Owner at Washington, D.C., within 30 days after the end of such year or other period, as additional charter hire for such year or other period, an amount equal to the percentages of such cumulative net voyage profit in excess of 10 per centum per annum on such capital computed in accordance with the following table (but such cumulative net profit so accounted for shall not be included in any calculation of cumulative net profit in any subsequent year or period) :
Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) not in excess of $100 per day — 50%.
Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of *211 $100 per day but not in excess of $800 per day — 75% on such excess over $100 per day.
Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $300 per day — 90% on such excess over $300 per day. [Italics supplied.]
The parties in their contracts specifically specified in Clause E and Clause C(l) that the “Basic Hire” is 15 percent. It does not say 15 percent plus some additional sum; it says 15 percent, flat.
Then in Clause 13 the parties provided for “additional charter hire.” This was to be computed by deducting from the net voyage profit “the basic charter hire hereinabove specified.” What was “the basic charter hire hereinabove specified”? It was what the preceding Clauses E and C(l) had specified, to wit, 15 percent. There was no other provision in the charters relating to basic charter hire.
This Clause 13 does not say that in computing the additional charter hire you should deduct a basic hire of 15 percent of the price of the vessel, plus 25 percent to 40 percent of the net voyage profits, and then pay as additional hire 50 percent of the remaining net voyage profits. It says deduct the basic hire of 15 percent and then pay as “additional charter hire” from 50 percent to SO percent of the net voyage profits. There is no basis for the contention that some part of the “additional charter hire” specified was “basic charter hire.”
It may be the charter could have provided what the defendant wants us to hold it did provide; but the fact is it did not so provide. It specifically provided for a basic rate of 15 percent, and such a rate was specifically authorized by statute. What was unauthorized by statute was the additional hire in excess of 50 percent.
The following cases are in accord: Dichman, Wright & Pugh, Inc., v. United States, supra; United States v. East Harbor Trading Corp., supra. The power to fix the basic charter hire rate under section 5 (b) was exhausted when the 15 percent rate was fixed by the contracts. It would appear that defendant’s theory, that the sliding scale of from 25 to 40 percent of the excess profit constituted a portion of the section 5 (b) basic rate, was an afterthought and not in *212 the minds of the parties when the contracts were entered into.
We are of the opinion that defendant had no authority to charge any amount as additional charter hire in excess of 50 percent of the cumulative net voyage profits.
Defendant alleges that plaintiffs voluntarily accepted the terms of the charters, including the sliding scale rates of additional charter hire provided for thereunder, and, therefore, are estopped from contesting the validity of the charter hire rates. This same argument was made and disposed of contrary to defendant’s position in Sword Line, Inc. v. United States, 228 F. 2d 344, and also in Dichman, Wright & Pugh, Inc. v. United States, supra. It was the Commission’s duty to comply with the law, and no provision of the charters in violation of the statutory requirements has any validity.
Plaintiff, American Export Lines, Inc., No. 70-56, is entitled to judgment in the admitted amount of $22,594.84, and judgment for this amount will be entered. Plaintiff, New York and Cuba Mail Steamship Company, No. 132-55, is entitled to judgment in the agreed amount of $7,536.76, and judgment in this amount will be entered. The counterclaims of defendant in cases No. 70-56 and No. 132-55 are dismissed. The cross “counterclaims” of both plaintiffs are dismissed without prejudice to the rights of plaintiffs to later assert the same in an appropriate forum.
Plaintiff’s motions for summary judgment are granted to the extent stated, and defendant’s like motions are disallowed.
It is so ordered.
Dukfee, Judge; Lakamoke, Judge; and Jones, Chief Judge, concur.