Jerome S. **SPEVACK** *

v.

The **UNITED STATES**.

No. 302–65.

United States Court of Claims.

Feb. 16, 1968.

---

* As the result of events which have occurred since the entry of orders of this court on May 20, 1966, and August 12, 1966, impounding and directing *in camera* consideration of certain documents and the proceedings, the orders of May 20, 1966, and August 12, 1966, are vacated.

Joseph Y. Houghton, Washington, D. C., attorney of record, for plaintiff. Carleton U. Edwards, II, Washington, D. C., of counsel.

R. W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, LARA-MORE, DURFEE, COLLINS, SKELTON, and NICHOLS, Judges.

### ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

#### PER CURIAM:

This case was referred to Trial Commissioner James F. Davis with directions to make recommendation for conclusions of law under Rule 54(b). The commissioner has done so in an opinion and report filed on March 7, 1967, in which the facts necessary to the opinion are stated therein, and a memorandum ** supplementing report of commissioner filed August 3, 1967. The case has been submitted to the court on requests for review by the parties of the commissioner's opinion and memorandum report, oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion and recommendation of the commissioner, it hereby adopts the same as the basis for its judgment in this case as hereinafter set forth. Therefore, defendant's and plaintiff's motions for summary judgment are denied and the case is remanded to the trial commissioner for further appropriate proceedings.

** On plaintiff's motion, granted by the court April 21, 1967, jurisdiction was restored to the commissioner under Rule 54(b) in view of the filing by defendant of its request for review of two exhibits not previously considered by the commissioner. After the filing of additional briefs by the parties, on August 3, 1967, the commissioner filed a memorandum supplementing his report of March 7, 1967, wherein he adhered to said report without change. The commissioner's memorandum, in pertinent part, stated as follows: "The exhibits, A and B, are, respectively, a letter from R. C. Blair of the Atomic Energy Commission to plaintiff and a letter from plaintiff to Blair. Both letters relate to plaintiff's consulting contract with the Atomic Energy Commission covering the period August 1, 1951 to January 31, 1952. See footnote 2 of the commissioner's report filed March 7, 1967. The letters support de-fendant's argument that the 'contract was * * * executed by the AEC with the express understanding that the AEC denied that plaintiff had made any improvement or that plaintiff had any rights in any improvement.' This argument goes to the merits of plaintiff's claim about which there is, in my opinion, a factual dispute. See page 16 of the commissioner's report filed March 7, 1967. Plaintiff notes that the newly filed Exhibits A and B 'obviously have nothing to do with the statute of limitations', which was the issue raised by defendant's motion for summary judgment. I agree and therefore adhere to my report of March 7, 1967, without change."

### OPINION OF COMMISSIONER

DAVIS, Commissioner:

Plaintiff in this case seeks reasonable and just compensation for defendant's breach of an alleged implied contract relating to a trade secret or invention. Defendant moves for summary judgment that plaintiff's claim is barred by the statute of limitations, 28 U.S.C. § 2501, which requires that suit be brought within six years after the claim first accrues. Plaintiff opposes the motion and, in addition, moves for summary judgment that defendant is liable under the implied contract on the basis of what plaintiff considers undisputed facts. For reasons hereinafter discussed, both motions should be denied.

#### The Facts

█ The subject matter of this litigation is complicated. It will be developed only as necessary to resolve the issues presented by the motions. For purposes of deciding defendant's motion on the statute of limitations, it is assumed that the factual allegations of plaintiff are true.[1]

Plaintiff is a chemical engineer who, in the early 1950's rendered consulting services to defendant's Atomic Energy Commission (AEC) in connection with a process for making heavy water. Plain-

1. Guessefeldt v. McGrath, 342 U.S. 308, 310, 72 S.Ct. 338, 96 L.Ed. 342 (1952); United States v. New Wrinkle, Inc., 342 U.S. 371, 373, 72 S.Ct. 350, 96 L.Ed. 417 (1952).

tiff had been working on problems of heavy water technology since 1942, and at various times from 1950 to 1953 worked under contract with the AEC.[2]

The process worked on and in large part developed by plaintiff is the so-called "dual temperature" (also "GS") process. Knowledge of details of the process is not necessary to resolve the issues. Suffice it to say that the process entails extraction of heavy water from a conventional water source by use of hydrogen sulfide gas in a dual temperature (hot water-cold water) cycle. Complex operations of chemical engineering are involved. The process is the subject of U. S. Patent 2,895,803, granted July 21, 1959, to the plaintiff, pertaining to process design of dual temperature exchange.

One problem associated with the process was excessive corrosion of ferrous metals, e. g., piping and valves, which contact aqueous hydrogen sulfide, an acidic liquid material used in the process. Plaintiff came up with a proposed solution to the corrosion problem which he disclosed to the AEC by letter dated May 31, 1951, at a time when he was not under express contract with the AEC. (See n. 2.) It is this proposed solution which is the subject matter in litigation. Discussion of details of plaintiff's proposal is not necessary. Once again, suffice it to say that the proposal, which will hereafter be referred to as "plaintiff's improvement," involved a scheme for reducing the acidity of the feedwater used in the process, thereby minimizing ferrous corrosion.

Between May 31, 1951, the date of plaintiff's proposal to the AEC, and January 31, 1953, the date on which plaintiff's last express contract with defendant terminated, plaintiff was led to believe that his improvement was not being used and would not be used by the AEC. However, sometime after January

31, 1953, the AEC used plaintiff's improvement in operating two of its plants making heavy water. At defendant's Dana, Indiana heavy water plant, the improvement was allegedly used from from March 1953 to spring 1957, when the plant closed; and at defendant's Savannah River, South Carolina plant, it was tested in 1955 and 1956 but apparently never used on a full-scale basis. Operating details of both plants were maintained in secrecy until early 1957.

Plaintiff claims he had no actual knowledge of defendant's use of his improvement until on or about September 15, 1959, when he discovered an article in the September 1959 issue of "Chemical Engineering Progress," a technical journal, describing in detail operation of defendant's plants. Suit was filed in this court on August 24, 1965, about 5 years and 11 months later.

### The Issue

The critical date for resolving the issue of time-bar is August 24, 1959, six years prior to the date of the petition. Defendant asserts that plaintiff's claims is time-barred on one of two alternative grounds: Either (1) plaintiff's improvement was first used by defendant in 1953 and last used in 1957, both of which dates are more than six years prior to filing the petition; or (2) plaintiff reasonably should have known of the potential claim, either in 1957 or just prior to the critical date in 1959, for reasons discussed later, at one of which times the statute started to run. Defendant deems it immaterial that plaintiff was in fact ignorant of his claim until September 1959, stating in its brief "plaintiff's ignorance of the existence of his right of action does not toll the statute of limitations," citing as authority two decsions of this court.[3]

Plaintiff's position essentially is that defendant was obligated by a contract implied in fact "to promptly notify plaintiff

---

2. Plaintiff was under express contract with the AEC from May 31, 1950 to May 29, 1951 and from August 1, 1951 to January 31, 1953. Note the two-month hiatus from May 29, 1951 to August 1, 1951.

3. New York & Cuba Mail S. S. Co. v. United States, 172 F.Supp. 684, 687, 145 Ct.Cl. 652, 658 (1959); Thomas v. United States, 125 Ct.Cl. 76 (1953).

if and when it should commence" using plaintiff's proposal and "to pay reasonable and just compensation" therefor. Plaintiff further contends that since defendant never notified him of use of the proposal, the statute of limitations did not start running until plaintiff discovered the fact in September 1959, as above noted.[4]

We dispose of defendant's first contention on the basis of this court's recent decision in Japanese War Notes Claimants Ass'n v. United States, 178 Ct.Cl. 630, 373 F.2d 356 (1967), cert. denied, 389 U.S. 971, 86 S.Ct. 466, 19 L.Ed.2d 461 wherein the court said, 178 Ct.Cl. at 634, 373 F.2d at 358–359:

> In certain instances the running of the statute [of limitations] will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim. Ignorance of rights which should be known is not enough. Art Center School v. United States, 142 F.Supp. 916, 921, 136 Ct.Cl. 218, 227 (1956); Thomas v. United States, 125 Ct.Cl. 76, 80 (1953); Dion v. United States, 137 Ct.Cl. 166 (1956); Navajo Freight Lines, Inc. v. United States, 176 Ct.Cl. 1265 (1966). *Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence* or it must show that its injury was "inherently unknowable" at the accrual date. * * * [Footnote omitted.]

> * * * Once plaintiff is on inquiry that it has a potential claim, the statute can start to run. * * * (Emphasis added.)

■ Clearly, plaintiff in the present case could have brought suit anytime after defendant first used his improvement in 1953, had plaintiff known of such use. However, the AEC, under applicable security regulations, operated its heavy water plants in secrecy from 1953 to 1957. There is nothing in the record to show that plaintiff had access to pertinent AEC classified information during this period from which he could reasonably have suspected defendant's use. Plaintiff expressly denies *actual* knowledge of such use until on or about September 15, 1959. Secret operation by defendant of its heavy water plants, albeit under legal right, resulted in concealment of plaintiff's claim within the meaning of the Japanese War Notes case, supra, and therefore the statute did not start to run during such period.

A more difficult problem is presented by defendant's second contention. Defendant contends that there were three documents publicly available before the critical date (August 24, 1959), each of which disclosed facts that would have put plaintiff on notice that he had a claim against defendant. Although not specifically stated, defendant's theory apparently is that plaintiff should be held to constructive knowledge of the contents of such documents inasmuch as plaintiff denies actual knowledge. Plaintiff contends that there was no announcement of public availability of any of the documents prior to the critical date and that any limited dissemination of the documents before such date was not sufficient to put him on notice of his claim and start the statute running.

At the commissioner's invitation, defendant submitted numerous affidavits relating to these documents, pertaining particularly to their public availability before the critical date. Each document, and the pertinent facts of its relevancy to the time-bar issue, will be discussed separately.

(a) *Document No. 1: DP–96*

In late 1956 the AEC announced its intention to declassify all documents relating to its heavy water production program. One such document was DP–96 (241 pages), entitled "Corrosion in Hydrogen Sulfide-Water Systems," dated

October, 1955. It disclosed operating details of defendant's Dana, Indiana plant, including the fact that plaintiff's improvement was there used.[5] Defendant's affidavits establish that DP-96 was from the beginning a classified document; that one copy was declassified March 7, 1957; that one declassified copy was made available without restriction at the AEC's Brookhaven National Laboratory research library on April 17, 1957; but that such copy was removed to the classified files the next day (April 18, 1957) as a result of a court order, discussed below. It is not clear from the record when the copy was returned to unrestricted availability. Presumably it was not until sometime after July 21, 1959, when the court order was lifted.

The court order resulted from a suit filed by plaintiff against the AEC in April 1957 in the District Court for the District of Columbia, seeking an injunction against publication of theretofore classified information relative to the GS process on which plaintiff had filed a U. S. patent application, in order to give plaintiff time to file foreign patent applications which he previously could not file because of security regulations. A temporary restraining order was granted but after a hearing, the request for injunction was denied. Plaintiff appealed to the Court of Appeals for the District of Columbia on April 22, 1957. One exhibit in the joint appendix filed in the Court of Appeals was a letter from the AEC to Columbia Technical Corporation, Woodside, New York, dated March 14, 1957, which in essence stated that several documents relating to heavy water

production had been declassified and would be available "within a few weeks." DP-96, one of the documents, was indicated as available "currently." The content of DP-96, other than its title, was not disclosed and no copy of it was made available to plaintiff in 1957. Defendant here relies upon the letter to establish knowledge by plaintiff in April 1957 that DP-96 existed and had been declassified.[6]

In brief then, defendant's position is that plaintiff was on notice in April 1957 of his potential claim because (1) at least one copy of DP-96 was declassified and publicly available in the AEC's Brookhaven Laboratory library, even though for only one day, and (2) plaintiff knew generally of a document, designated DP-96 and entitled "Corrosion in Hydrogen Sulfide-Water Systems."

We do not agree with defendant. All plaintiff can reasonably be held to know, in April 1957, was that a document designated DP-96 was in existence. He did not know, and could not reasonably have known, of its contents, of which but 5 of 241 pages were relevant to plaintiff's claim. He never saw a copy of it, even though it was *identified* in the Court of Appeals record. Nor could plaintiff reasonably have known of the public availability of DP-96 at Brookhaven Laboratory, since there is nothing in the record to show public *announcement* of its availability prior to November 1959, when DP-96 was listed in "Nuclear Science Abstracts," the AEC's publicly distributed catalog of currently available documents.[7] We do not think, therefore, that

---

5. Plaintiff contends that DP-96 does not disclose use by defendant of his improvement. The contrary is assumed for purposes of deciding the motions.

6. By order of Commissioner Fletcher, to whom this case was previously referred, the joint appendix in the Court of Appeals, as well as one of plaintiff's affidavits which refers to it, is being considered *in camera*. The appendix is part of the record in plaintiff's litigation with the AEC in the District Court and is still impounded in that court. Plaintiff

contends that there are "affidavits, etc." in the appendix which may "reveal certain aspects * * * detrimental to plaintiff's interests."

The only document in the joint appendix relevant to the issues here is the letter of March 14, 1957, above discussed. Since plaintiff is not a party to the letter and since it discloses no information which could be detrimental to plaintiff, we discuss it freely.

7. DP-96 was also abstracted in another Government document, TID-3091, dated

in April 1957 plaintiff was on "inquiry that it had a potential claim" so as to start the running of the statute of limitations. Japanese War Notes case, supra.

(b) *Document No. 2: DP–400*

■ DP–400, entitled "Production of Heavy Water, Savannah River and Dana Plants," dated July 1959, discloses that defendant used plaintiff's improvement at its Dana plant. The document was never classified and the only issue is whether its dissemination prior to the critical date (August 24, 1959) was sufficient to put plaintiff on notice of his claim.

Defendant's affidavits establish that on August 14, 1959, 512 copies of DP–400 were mailed to appropriate Government and private agencies on an AEC distribution list; that, by August 21, 1959, at least two publicly accessible libraries, *viz.*, the U. S. Geogolical Survey Library and the U. S. Patent Office Library, had received a copy; and that, under the practice of each library, its copy would be immediately made available to the public upon request. There is no evidence that public announcement was made of DP–400's availability until November 1959, when it was described in "Nuclear Science Abstracts." [8] Plaintiff denies actual knowledge of the existence or contents of DP–400 prior to the critical date.

We hold, for reasons stated above with respect to DP–96, that the unpublicized limited dissemination of DP–400 in August 1959 did not put plaintiff on inquiry that he had a potential claim and thus did not start the statute of limitations running.

(c) *Document No. 3: "Chemical Engineering Progress" article*

As noted above, plaintiff's first actual notice of his claim came in September 1959 from an article in "Chemical Engineering Progress." The article, entitled " * * *. production of Heavy Water," was written by two employees of the du Pont company which operated the AEC's heavy water plants. The article was originally prepared for presentation at the June 9–12, 1957 meeting of the American Institute of Chemical Engineers in Seattle, Washington. The April 1957 issue of "Chemical Engineering Progress" carried notices of papers to be there presented, including the following:

*Production of Heavy Water*, W. P. Bebbington, DuPont Savannah River Laboratory, Aiken, S. C., and V. R. Thayer, DuPont, Wilmington, Del.

Just declassified, this is a detailed description and analysis, including cost factors, price, technological processes, of the two heavy water plants operated for AEC by DuPont.

Also, the printed program of the meeting carried an abstract, reproduced below in part:

PRODUCTION OF
HEAVY WATER
W. P. Bebbington
E. I. du Pont de Nemours &
Co., Inc.
Savannah River Laboratory
Aiken, S. C.
V. R. Thayer
E. I. du Pont de Nemours &
Co., Inc.
Wilmington, Del.

Two large plants are in successful operation producing heavy water from natural water by dual-temperature exchange with hydrogen sulfide gas. The plants, built and operated for the Atomic Energy Commission, have been in operation since 1952, supplying heavy water first for the nuclear reactors at the Savannah River Plant and later for various experimental re-

---

October 1959, put out by the Office of Technical Services, U. S. Dept. of Commerce. It is not clear when public availability of TID–3091 was announced. In any event, October 1959 is after the critical date.

8. DP–400 was also abstracted in TID–3091 and the remarks in n. 7 are relevant.

actors, here and abroad. The two plants are of somewhat different designs, but utilize the same principles and are of about the same size.

Three deterrents to previous use of dual-temperature hydrogen sulfide exchange; hazard, corrosion, and difficulty of control, have been overcome.

\* \* \* \* \* \*

The paper was not presented in 1957 due to the court proceedings discussed above. In July 1959, after court restraints against publication were lifted, 18 preprint copies were sent to various individuals and companies who had earlier requested them. Apparently at least two of them were received by July 31, 1959. Plaintiff neither requested nor received a copy nor did he have any knowledge of the contents of the article or of its distribution.

▮ We hold, first, that neither abstract noted above could reasonably have put plaintiff on notice of his claim in 1957. The first abstract says nothing about corrosion control and could not possibly constitute notice. The second abstract, though more specific with respect to the corrosion problem, would not reasonably have led plaintiff to believe that the problem had been overcome by use of his previously rejected improvement. We further hold, for reasons already discussed, that dissemination of the limited number of preprints, of which plaintiff had no knowledge, was not a sufficient publication to put plaintiff on notice of his potential claim.

▮ Finally, defendant contends that after declassification of pertinent documents in 1957, the AEC did all it could to make prompt disclosure of information relating to the heavy water program; that any concealment of facts which would have put plaintiff on notice of his claim, at least from 1957 to 1959, resulted from plaintiff's own act to restrain publication of pertinent AEC documents; and that plaintiff therefore should derive no benefit from the delay he imposed. While it is true that plaintiff's actions in the courts of the District of Columbia did delay full publication and dissemination of the pertinent documents, plaintiff's attempt to restrain the AEC in 1957 was motivated solely by his desire to protect foreign patent rights in his inventions relating to the basic "dual temperature" or GS process. Plaintiff, from 1957 to 1959, did not know and could not reasonably have known that he had another potential claim against defendant, even though it arose out of the same general subject matter. Plaintiff should not be penalized simply because concealment was prolonged while he sought to protect interests of which he had knowledge.

▮ Turning now to plaintiff's motion, in essence plaintiff seeks summary judgment that (1) defendant used plaintiff's improvement and (2) plaintiff is entitled to just and reasonable compensation for damages arising out of defendant's use and failure to inform plaintiff thereof.[9] While there does not appear to be any material dispute as to the pertinent operating details of defendant's Dana and Savannah River plants, defendant vigorously denies liability on grounds, among others, that (1) plaintiff's improvement was not a trade secret or invention for which defendant is liable for use, (2) the improvement was not disclosed to defendant in confidence, and that, in any event, (3) defendant had a right to use the improvement due to the relationship of the parties at the time of disclosure. These contentions raise material issues of fact which are not resolved in the petition and affidavits of record. Defendant has not yet answered the petition and the case clearly is not yet ripe for disposition on the merits.

Accordingly, defendant's motion for summary judgment should be denied and plaintiff's motion for summary judgment should be denied.

---

**9.** Plaintiff's motion also seeks summary judgment that his claim is not barred by the statute of limitations. This part of his motion is really opposition to defendant's motion which was disposed of above.