Thomas Nelson FLANAGAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 441–82C.

United States Claims Court.

June 13, 1983.

Gary Williams, Los Angeles, Cal., with whom were Fred Okrand and ACLU Foundation of Southern California, Los Angeles, Cal., for plaintiff.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

KOZINSKI, Chief Judge.

### FACTS

Plaintiff, Thomas Nelson Flanagan, seeks relief in a military pay dispute arising from events alleged to have taken place over 40 years ago. Plaintiff, who is black, enlisted in the United States Navy on August 14, 1942. After boot camp he was assigned to the Naval Ammunition Depot at Mare Island, California. Plaintiff alleges that on December 27, 1942, he was on liberty alone in a tavern in Vallejo, California, when he heard noise and gunfire outside. When he looked out the door, he observed white marines and shore patrolmen firing into a crowd of black sailors.

The following day plaintiff reported the incident to his commanding officer and inquired as to what action would be taken against the whites who had done the shooting. Plaintiff expressed the view that it was wrong for white and black Americans to be shooting each other, particularly in time of war. Plaintiff was told to return to his barracks and his commanding officer would speak to him about the matter a few days later.

Plaintiff claims that on January 5, 1943, he was summoned by his commanding officer and told that he could accept an undesirable discharge or face a court-martial for mutiny. He was not advised of a right to counsel nor was he given the opportunity to make a statement. After the commanding officer pointedly informed him that mutiny was a capital offense, plaintiff accepted the undesirable discharge. Military police put him on a train leaving town the same day. He later learned that his commanding officer had based the discharge on the assertion that plaintiff had promoted ill feelings and racial prejudice, and that he had been a ring leader in stirring up trouble and discontent among blacks.

Plaintiff alleges that as a result of his undesirable discharge, his employment opportunities were impaired and he was deprived of his veteran's benefits. Plaintiff suffered the effects of the discharge until July 25, 1979. On that date the Naval Discharge Review Board upgraded his discharge to honorable and restored his veteran's benefits. The board gave the following reason for its action:

> The disciplinary record of the applicant fails to support the strong racial comments made by the CO in his letter to CNP explaining the reason for discharge. If the applicant was a ring leader, promoting ill feeling and stirring up trouble and discontent among the other blacks, he certainly would have been so charged by command which held Captain's Mast for such infractions as smoking in the barracks. In the absence of such charges to support the CO's statement, it appears there was prejudice in the awarding of the discharge.

### DISCUSSION

Plaintiff's allegations, if substantiated, present a shocking picture of official abuse, made particularly reprehensible by overtones of racial prejudice. Moreover, the decision of the Discharge Review Board strongly suggests that the circumstances surrounding plaintiff's discharge could not have occurred as documented by Navy records. This lends support to plaintiff's version of the events.

The court, however, lacks jurisdiction to consider plaintiff's claim because the court's six year statute of limitations ran some 34 years ago. Despite plaintiff's apparent lack of sophistication, no circumstances exist which warrant tolling of the limitations period. *See Braude v. United States,* 218 Ct.Cl. 270, 585 F.2d 1049 (1978); *Spevack v. United States,* 182 Ct.Cl. 884, 390 F.2d 977 (1968); *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Congress has waived sovereign immunity for six years only, reserving to itself any relief which might be afforded as to claims arising more than six years before filing suit in this court. It is to the legislative forum that plaintiff must turn if he is to receive redress for the wrong he claims to have suffered.

The clerk is directed to dismiss the petition.

No costs.