Arthur FERGUSON et al., Plaintiffs,

v.

Casper WEINBERGER, Individually and in his official capacity as Secretary of the Department of Health, Education, and Welfare, and Theodore Carkulis, Individually and in his official capacity as Director of the Department of Social and Rehabilitation Services for the State of Montana, Defendants.

No. CV 75–11–Bu.

United States District Court,
D. Montana,
Butte Division.

Feb. 13, 1975.

Steven L. Bunch and J. Dennis Moreen, Montana Legal Services, Helena, Mont., for plaintiffs.

Helena S. Maclay, Asst. U. S. Atty., Butte, Mont., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RUSSELL E. SMITH, Chief Judge.

Plaintiffs, all of whom qualified for disability relief under the Montana Aid to Disabled (MAD) laws after June 1973 and all of whom were receiving MAD benefits in December 1973, were removed from the Supplemental Security Income Program (SSI) without any pretermination hearing. Wood and Ferguson were terminated in April, Pederson in June, and Garcia and Muskovitz in August 1974. All except Muskovitz applied for reconsideration, which was denied, and all have requested an administrative law hearing, but such has not yet been had. For themselves and a class of persons similarly situated whom they seek to represent they request a preliminary injunction restraining the defendants from withholding SSI benefits until after they have been afforded an evidentiary hearing. I find from the affidavits that plaintiffs are dependent upon SSI payments for their livelihood and that they face the extreme emergency

described by the Supreme Court in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). I find that the class which plaintiffs seek to represent is so numerous that joinder of all members is impracticable, that there are questions of law common to the class, that the claims of the plaintiffs are typical of the claims of the class, and that plaintiffs will adequately represent all of the parties, and that the questions of law common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The court has jurisdiction under 28 U.S.C. § 1361. *See* Brown v. Weinberger, 382 F.Supp. 1092 (D.Md.1974).

Plaintiffs were determined to be disabled and entitled to relief under MAD. Laws of Montana (1951), Ch. 160, as amended. Under that Act benefits were paid to the disabled (as defined by Montana law), who met the other requirements of Montana law, out of funds provided by the states and counties, assisted by grants from the United States.

In 1972 Congress enacted the Supplemental Security Income (SSI) Law. It was said in House Report (Ways and Means Committee) No. 92–231[1] that the Act would provide "for a basic restructuring of the national welfare system by replacing the four existing Federally-aided public assistance programs by new Federal programs for needy families and for needy aged, blind or disabled persons." The Act provided its own definition of disability which was more stringent than the definitions employed under many of the state acts. After the enactment of P.L. 92–603, Montana repealed the Aid to Disabled (MAD) Act. Laws of Montana (1974) § 1, Ch. 210.

When the statute upon which entitlement is based is repealed, then, absent some constitutional entitlement, the entitlement disappears with it. The legislative process is not affected by the due process considerations expressed in Goldberg v. Kelly, *supra.* Upon the adoption of the SSI program and the repeal of the MAD Act, the plaintiffs' entitlements under the Montana law ceased, and if plaintiffs now have entitlements, they must be found in the SSI program.

When Congress enacted P.L. 92–603, it was free to fix the conditions of eligibility as it saw fit. Disability was defined in P.L. 92–603 § 1614(a)(3)(B) (42 U.S.C. § 1382c(a)(3)(B)), and by § 1631(c) (42 U.S.C. § 1383(c)) the Secretary is required to provide for reasonable hearings for persons claiming to be eligible. There is nothing in the law to suggest benefits are payable until after disability has been established.

Congress did, however, as it had power to do, provide a grandfather clause which qualified for relief of all those who had been determined to be disabled under a state plan and who received aid under that plan in December 1973. P.L. 92–603 § 1614(a)(3)(A). This grandfather clause was modified by P.L. 93–233 § 9 (42 U.S.C. § 1382c(a)(3)(E) ) so that it covered only those persons who were receiving aid in December 1973 and at least one month prior to June 1973. The effect of P.L. 93–233 § 9 was to establish a new class of persons who had received state aid but who were not blanketed into the new federal program. For that class P.L. 92–603 § 1631(a) (4)(B) (42 U.S.C. § 1383(a)(4)(B)) gave the Secretary a power to pay benefits under a presumptive disability for a period of not exceeding three months. By P.L. 93–256 (88 Stat. 52) the power of the Secretary to pay on a basis of presumptive disability was extended *during the calendar year 1974.* If plaintiffs' entitlements are measured by the federal law, plaintiffs were at the most entitled to a presumptive period of disability which by law terminated at the end of calendar year 1974.

---

I. U.S.Code Cong. & Admin.News 4989–90 (1972).

A host of federal district court decisions have held that persons in the situation of the plaintiffs here could not be denied benefits without a pretermination hearing as required by Goldberg v. Kelly, *supra*. *See* Brown v. Weinberger, *supra*, and cases cited; Stienstra v. Weinberger, Civ. 4–74–511 (D.Minn., Nov. 11, 1974); Reed v. Weinberger, C 74–936 (N.D. Ohio, Oct. 25, 1974); Padilla v. Weinberger, Civ. No. 74–439 (D. N.M., Sept. 24, 1974). I interpret these cases to mean that, once the Secretary has made a determination of disability based on a statutorily permissible presumption, the person so determined to be eligible may not be denied the benefit of the presumption and the determination based on it without a pretermination hearing meeting the Goldberg v. Kelly standards.

The language of P.L. 93–256 is:

> [E]xcept that no such benefits may be paid on the basis of such presumptive disability for any month after the month in which the Secretary of Health, Education, and Welfare has made a determination as to whether such individual is disabled, as defined in section 1614(a)(3)(A) of that Act.

The effect of the decisions cited is that, as a matter of due process, the determination of disability provided for in P.L. 93–256 must meet the Goldberg v. Kelly standards. For these reasons the plaintiffs here were entitled to payments during the calendar year 1974.[2]

Neither P.L. 93–256 nor any other law gave the Secretary any power to make payments to the persons in plaintiffs' class beyond the year 1974. There are no restrictions on the power of Congress to limit entitlements or to limit the power of the Secretary to determine entitlements. The entitlement could never, however, extend beyond the time within which the Secretary was authorized to pay. Here the authority of the Secretary to pay expired with the payments due for December 1974, and if plaintiffs receive no benefits in 1975 it is not because the Secretary has terminated an entitlement. It is because as to 1975 no entitlement ever came into existence.

This opinion constitutes the court's findings of fact and conclusions of law.

---

2. Congress could, in the statute creating an entitlement, place procedural conditions on enjoyment of it. It might establish a presumption of eligibility but limit it so that the presumption would disappear after an ex parte administrative decision. That may be what Congress intended by P.L. 93–256, but the precedent is contrary.