**720**

James A. BELLAMY, et al.

v.

The UNITED STATES.

No. 593–83L.

United States Claims Court.

April 12, 1985.

George U. Lane, General Services Administration, of counsel.

## OPINION

YOCK, Judge.

In this case, the plaintiffs seek to recover for the alleged failure of the defendant to afford the plaintiffs the opportunity to repurchase real property formerly owned by them, which was condemned by the Government, in 1941, under the Emergency War Powers Act, Act of July 2, 1917, ch. 35, 40 Stat. 241 (codified as amended at 50 U.S.C. § 171 (1940)) (repealed 1956). The defendant has filed a motion to dismiss, and the plaintiff' has filed a response in opposition to such motion. For the reasons discussed below, the defendant's motion to dismiss is granted, and the complaint will be dismissed without prejudice.

### Facts

In 1941, the Government acquired by condemnation some 95,497 acres of land, situated in Horry and Georgetown Counties, South Carolina, under the Emergency War Powers Act, *supra*. Subsequently, the Government turned such land into the Myrtle Beach Aerial Gunnery and Bombing Range. The plaintiffs are the former owners, or the heirs of the former owners, of three tracts of land, constituting 76.5 acres, included in that acquisition. In 1946 or 1947,[1] pursuant to the Surplus Property Act of 1944, ch. 479, 58 Stat. 765 (1944) (originally codified at 50 U.S.C.App. §§ 1611–46 (Supp. IV 1941–1945)) (repealed 1949),[2] some of this property was excessed and sold to the City of Myrtle Beach, South Carolina, since it was no longer needed by the Federal Government.[3] A portion of the

Larry L. Hanna, Myrtle Beach, S.C., for plaintiff.

Regina R. Belt, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant;

1. In ruling on the defendant's motion to dismiss, this Court will accept as true the facts as stated by the plaintiff in its complaint and other supplementary pleadings and briefs.

2. The Surplus Property Act of 1944 was designed to facilitate and to regulate the disposal of federally-owned property determined to be surplus to the needs of the Government. *See* 50 U.S.C.App. § 1611 (Supp. IV 1941–1945).

3. Section 13 of the Surplus Property Act of 1944, *supra,* provided that:

"(a) The Board shall prescribe regulations for the disposition of surplus property to States and their political subdivisions and instrumentalities, and to tax-supported and nonprofit institutions, and shall determine on the basis of need what transfers shall be made. * * *

\* \* \* \* \* \*

"(f) The disposal of surplus property under this section to States and political subdivisions and instrumentalities thereof shall be given priority over all other disposals of property provid-

plaintiffs' former property was included in that excessed property. Subsequently, in 1948 or 1949, the plaintiffs allege that the City of Myrtle Beach deeded some of that excessed property back to the defendant, which was then followed by a second declaration of surplus. In any event, the subject real estate is now in the Government's possession.

In 1981, a portion of the Myrtle Beach U.S. Air Force Base, South Carolina, was determined by the Government to be excess property. This portion consisted of 27.23 acres of land, which had been part of the original 95,497 acres condemned in 1941. On July 27, 1983, the General Services Administration issued an invitation for bids on this property.

The plaintiffs contend that they had no notice, actual or constructive, that their property had been excessed in 1946 or 1947, until they began making inquiries in response to the July 27, 1983, invitation for bids, some 30 odd years after a portion of their former property was first excessed pursuant to the Surplus Property Act of 1944. The plaintiffs argue that the defendant acted unconstitutionally in not affording them an opportunity to exercise the repurchase rights of former owners of property acquired by a Government agency after December 31, 1939.[4] As the former owners of the property that was condemned in 1941, the plaintiffs claim that the Government should have notified them in 1946 or 1947 of their right to priority in repurchasing their property.[5]

Further, the plaintiffs assert that the defendant employed a "selective notification" system by notifying some, but not all, of the former owners of the 95,497 acres of land condemned in the 1941 acquisition. Those former owners who received such notification were properly given the opportunity to repurchase their former real property. Subsequently, the defendant deeded some of the condemned property back to the original owners at or below the price for which it was originally acquired by the Government in 1941. The plaintiffs argue that, as a result of this selective notification in 1946 or 1947, the defendant classified the condemnees into two groups: (1) those condemnees who were given an opportunity to retrieve their condemned land when it was excessed, and (2) those condemnees who were not given such an opportunity. According to the plaintiffs, this classification violated the equal protection component embodied in the fifth amendment due process clause. Furthermore, the plaintiffs argue that the defendant's failure to notify them of their repurchase right deprived the plaintiffs of property without due process of law. The plaintiffs, however, specifically have not alleged that such Governmental action constituted a fifth amendment taking of their former property.

To remedy this perceived injustice, the plaintiffs seek the right to repurchase their former property at or below the price for which it was acquired by the Government in 1941. Alternatively, the plaintiffs seek to recover the current fair market value of such land. Moreover, the plaintiffs seek to recover the fair rental value of the proper-

ed for in this Act except transfers under section 12."

See *Thielecke v. United States,* 491 F.Supp. 1343 (E.D.Mo.1980).

**4.** Section 23 of the Surplus Property Act of 1944, *supra,* provided that:

"(d)(1)(A) In the case of any surplus real property which was acquired by any Government agency after December 31, 1939, the person from whom such property was acquired shall be given notice, in such manner (which may include publication) as the Board by regulation may prescribe, that the property is to be disposed of by the United States and shall be entitled to purchase such property, in substan-

tially the identical tract as when acquired from such person, at private sale at any time during the period of ninety days following such notice: *Provided,* That such period shall be extended in any case when it appears that such extension is necessary or appropriate to facilitate the sale of any surplus real property under this subsection."

**5.** Section 8305, 32 C.F.R., 1946 Supp., relied upon by neither party, appears to lend support to the plaintiffs' position that they should have been notified of their right to repurchase the subject real property.

ty from the date that it was declared surplus property in 1946 or 1947.

The defendant has responded to the plaintiffs' complaint by answer, and now by motion to dismiss. In its motion to dismiss, the defendant asserts that the plaintiffs' claims: (1) do not fall within the jurisdiction of this Court, since they are based on fifth amendment due process and equal protection rights; (2) fail to state a claim upon which relief may be granted, since the statutory provisions upon which they are based have been repealed; and (3) in any event, are barred by the statute of limitations.

## *Discussion*
### I. Fifth Amendment Claims

■ The plaintiffs have stated in their complaint, and in their opposition to the defendant's motion to dismiss, that their claim is based "solely" upon constitutional entitlement, *i.e.*, on the due process and equal protection guarantees of the fifth amendment to the U.S. Constitution. Based upon these jurisdictional allegations, the defendant has asserted in its motion to dismiss that this Court has no jurisdiction to hear this matter. The defendant is correct in this regard. It is well settled, that "[t]his court has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages." *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980). *See Inupiat Community of the Arctic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, 132, *cert. denied*, 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982); *Conservative Caucus, Inc. v. United States*, 228 Ct.Cl. 45, 54, 650 F.2d 1206, 1211–12 (1981); *Mack v. United States*, 225 Ct.Cl. 187, 192, 635 F.2d 828, 832 (1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). Thus, in order to fall within the jurisdiction of this Court, the plaintiffs must establish that their claims are based on a constitutional provision, statute, or regulation that can be fairly interpreted as mandating compensation by the Federal Government for the damages they sustained. *Mitchell v. United States*, 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580, 590–91 (1983).

■ The plaintiffs, however, have only pointed to the due process clause and the equal protection guarantees of the fifth amendment to the U.S. Constitution in support of their claims in this Court. They have specifically not raised the last clause of the fifth amendment, commonly known as the taking clause, which provides the only constitutional jurisdictional basis for a claim in this Court. It is only that constitutional clause that can be interpreted as mandating money damages for the taking of private property for public purposes. *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946).

■ Likewise, the plaintiffs do not point to, nor can the Court discern, any provision in the Surplus Property Act of 1944, which authorized the payment of money damages by the Government should anyone be injured by the defendant's noncompliance with the statute's provisions. *See Mack v. United States, supra; Carruth v. United States, supra.* Neither the Act nor its implementing regulations can be interpreted as authorizing an award of monetary compensation for the Government's failure to adhere to the statute's notice requirements. The Act was intended to provide for the efficient and equitable distribution of property the Government had acquired during World War II and subsequently found surplus to its needs after the cessation of hostilities.

The Court must, therefore, conclude that the plaintiffs' claims, based on the due process and the equal protection guarantees of the fifth amendment, are not within the jurisdiction of this Court. Thus, this Court lacks jurisdiction to hear the plaintiffs' claims in this case.

### II. Expired Statutory Notice Provisions

■ Next, the defendant contends that the statutory notice provisions, which the plaintiffs are relying on to sustain their

action, were repealed by statute in 1949. Thus, any entitlement that would flow therefrom disappeared once the statutory basis, upon which the plaintiffs rely, was repealed.

At the time of its enactment, section 38 of the Surplus Property Act of 1944, *supra*, provided:

> Unless extended by law, this Act shall expire at the end of three years following the date of the cessation of hostilities in the present war. For purposes of this section the term "date of the cessation of hostilities in the present war" means the date proclaimed by the President as the date of such cessation, or the date specified in a concurrent resolution of the two Houses of Congress as the date of cessation, whichever is the earlier.

Moreover, Congress reaffirmed its intent to limit the duration of the Surplus Property Act of 1944 in subsequent legislation. Particularly, the Supplemental Independent Offices Appropriation Act of 1949 declared that:

> The Surplus Property Act of 1944, as amended, shall not apply to property of the Government which has not been declared surplus under the terms of such Act as of the date of enactment hereof [February 28, 1949] and any such property determined to be surplus shall be disposed of in accordance with the terms of other existing law.

Supplemental Independent Offices Appropriation Act of 1949, ch. 775, 62 Stat. 1196, 1203 (1948).

Finally, in enacting the Federal Property and Administrative Services Act of 1949, ch. 288, § 502(a)(1), 63 Stat. 377, 399 (1949) (FPASA), Congress expressly repealed virtually all of the entire Surplus Property Act of 1944, including section 23. Section 502 of the FPASA, which was designed to revamp the federal property management and disposal system, explicitly provided an immediate termination date for the priorities of the Surplus Property Act of 1944:[6]

SEC. 502.(a) There are hereby repealed—

(1) the Surplus Property Act of 1944, as amended (except sections 13(d), 13(g), 13(h), 28 and 32(b)(2)), * * * *Provided*, That, with respect to the disposal under this Act of any surplus real estate, all priorities and preferences provided for in said Act, as amended, shall continue in effect until 12 o'clock noon (eastern standard time), December 31, 1949[.]

In *Ferguson v. Weinberger*, 389 F.Supp. 759, 761 (D.Mont.) *adopted*, 395 F.Supp. 526 (D.Mont.1975), the district court held that once a "statute upon which entitlement is based is repealed, then, absent some constitutional entitlement, the entitlement disappears with it." *See Gwin v. United States*, 184 U.S. 669, 675, 22 S.Ct. 526, 529, 46 L.Ed. 741, 749 (1902); *Insurance Co. v. Ritchie*, 72 U.S. (5 Wall.) 541, 544–45, 72 U.S. 541 (1866); *DeRodulfa v. United States*, 461 F.2d 1240, 1251 (D.C. Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); *General Motors Acceptance Corp. v. Saliba*, 260 F.2d 262, 263–64 (5th Cir.1958). Clearly, the Surplus Property Act provisions, upon which the plaintiffs rely, were repealed in 1949 by Congress. Here, however, the plaintiffs note that their claim is in fact based *solely* on constitutional entitlement. Assuming that the plaintiffs' characterization of their claim is correct, we again note that this Court has no jurisdiction over constitutional claims that do not obligate the Federal Government to pay money damages. *Carruth v. United States*, *supra*, 224 Ct.Cl. at 445, 627 F.2d at 1081. Furthermore, neither the Surplus Property Act of 1944 nor its implementing regulations authorized an award of monetary compensation for any failure of the Government to adhere to the notice requirements.

Therefore, the defendant is again correct that the plaintiffs have failed to state a claim upon which this Court may grant

---

**6.** This section of the FPASA was redesignated as section 602 thereof by Act of September 5, 1950, ch. 849, § 6(b), 64 Stat. 578, 583 (1950).

relief, since the underlying statutory authorization was repealed over 35 years ago.

### III. Statute of Limitations

■ Finally, the defendant also argues that, in any event, the plaintiffs cannot now, some 35 years later, challenge the alleged 1946/1947 transfer of their former real property to the City of Myrtle Beach. The defendant vigorously asserts that the statute of limitations was specifically designed to forestall claims such as the plaintiffs assert in this case. Again, the Court must agree with the defendant.

Title 28 U.S.C. § 2501 provides that:

Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

As a result, it is well established that this six-year statute of limitation is jurisdictional. *See Parker v. United States,* 2 Cl.Ct. 399, 402 (1983); *Gerber v. United States,* 2 Cl.Ct. 311, 315 (1983); *Ellis v. United States,* 1 Cl.Ct. 141, 143 (1983); *Kirby v. United States,* 201 Ct.Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). For purposes of this statute of limitations, a claim accrues "when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Association of the Philippines, Inc. v. United States,* 178 Ct.Cl. 630, 632, 373 F.2d 356, 358, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Thus, in order for this Court to have jurisdiction, the plaintiffs must identify some event that occurred on or after September 28, 1977, which first caused their claims to accrue.

■ The plaintiffs, however, have failed to identify any such event, occurring within the six-year period preceding the filing of this suit, that first caused their claims to accrue. Contrary to the plaintiffs' assertions, it is clear that the cause of action accrued no later than 1946 or 1947, the date their former property was allegedly transferred to the City of Myrtle Beach. It was at this time that the alleged "selective notification" occurred, since the Government allegedly failed to notify the plaintiffs.

■ The plaintiffs' first awareness, in 1983, of events occurring some 35 years before, does not cause the accrual of a claim, since ignorance of one's rights will not toll the statute of limitations. *Camacho v. United States,* 204 Ct.Cl. 248, 257–58, 494 F.2d 1363, 1368 (1974); *Japanese War Notes Claimants Association of the Philippines v. United States, supra,* 178 Ct.Cl. at 634, 373 F.2d at 358–59; *Navajo Freight Lines, Inc. v. United States,* 176 Ct.Cl. 1265, 1270 (1966); *New York and Cuba Mail S.S. Co. v. United States,* 145 Ct.Cl. 652, 658, 172 F.Supp. 684, 687 (1959). Instead, in order for the plaintiffs to overcome the requirements of the statute of limitations, where their claims accrued more than six years prior to the commencement of the instant suit, they must establish either that the defendant undertook to conceal its actions, thereby depriving the plaintiffs of the opportunity to learn of the accrual of their claims, or that the accrual of their claims was "inherently unknowable." *Japanese War Notes Claimants Association of the Philippines v. United States, supra,* 178 Ct.Cl. at 634, 373 F.2d at 359. Here, however, the plaintiffs have failed to establish either of these exceptions to the six-year statute of limitations. Furthermore, this Court has been given no reason whatsoever to believe that the Government's decision to selectively inform only certain former landowners was aimed in any way at concealing the plaintiffs' potential cause of action. *See Gilmore v. United States,* 228 Ct.Cl. 829, 832 (1981).

The plaintiffs have responded that it was the defendant's failure to notify the plaintiffs, as statutorily required, which caused them to be unaware of the accrual of their claims. However, the plaintiffs' right to bring suit arose at the time the alleged selective notification occurred, unless they can show that the acts fixing the Government's liability were concealed or were inherently unable to be discovered. *Japa-*

*nese War Notes Claimants Association of the Philippines v. United States, supra,* 178 Ct.Cl. at 634, 373 F.2d at 359. Since the Court is dealing with real estate in this claim, it is virtually impossible for the plaintiffs to show concealment or that the acts were inherently unknowable. Real estate transactions are filed for public notice and record. In any event, the plaintiffs have not shown, nor even alleged, either exception to the six-year statute of limitations.

In light of the foregoing, it is clear that the plaintiffs' claims first accrued nearly 35 years ago and thus the statute of limitations deprive this Court of jurisdiction to hear this matter.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss is granted and the plaintiffs' complaint will be dismissed without prejudice.