**Mary L. DUNCAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 10–320L.

United States Court of Federal Claims.

April 12, 2011.

Mary L. Duncan, Upper Marlboro, MD, pro se.

Stacey M. Bosshardt, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

MARGARET M. SWEENEY, Judge.

Plaintiff Mary L. Duncan, appearing *pro se*, filed a complaint against the United States, an application to proceed *in forma pauperis*, and a request for alternative dispute resolution. She alleges that the United States Department of Housing and Urban Development ("HUD") infringed her property rights by selling land that she owns to third parties. Defendant moves to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"), contending that plaintiff's claim is time-barred and that plaintiff fails to allege an affirmative act of the government that deprived her of any property interest. For the reasons set forth below, the court concludes that plaintiff's claim is time-barred and, therefore, subject to dismissal for lack of jurisdiction pursuant to RCFC 12(b)(1).[1] Accordingly, the court grants plaintiff's application to proceed *in forma pauperis*, denies her request for alternative dispute resolution, and dismisses her complaint.

## I. BACKGROUND[2]

### A. Allegations in Plaintiff's Complaint

The property at issue in this case is a parcel of land in Prince George's County, Maryland. The property, described as "1/2 Acre part of Independence situate in Seat Pleasant Election District" and assessed in the names of B.L. Gover and Cornelia B. Gover, was offered for purchase at a tax sale in March 1937. Def.'s Ex. A at 1. The County Commissioners of Prince George's County ultimately purchased the property at a final tax sale on September 18, 1939. *Id.* After the redemption period expired, the County Commissioners issued an order on

---

1. Because the court finds that it lacks jurisdiction over plaintiff's complaint, it need not address defendant's second contention.

2. The facts are derived from the complaint ("Compl."), the exhibits appended to defendant's motion to dismiss and reply brief ("Def.'s Ex."), the exhibits appended to plaintiff's September 29, 2010 response to defendant's motion ("Pl.'s Ex."), and the exhibits appended to plaintiff's December 3, 2010 response to defendant's motion ("Pl.'s Supp'l Ex."). With respect to plaintiff's December 3, 2010 exhibits, the court has renumbered the January 31, 1976 newspaper article as supplemental exhibit three due to a duplication of exhibit numbers.

September 2, 1947, directing that the property be sold to Jasper Brown and Willie Brown for $60.00. *Id.;* Compl. 2; Pl.'s Ex. 8 at 4. The property was deeded to the Browns on September 9, 1947. Compl. 2; Def.'s Ex. A at 1–2. The deed indicated that further information concerning the unpaid taxes could be found in "Equity proceedings No. 10182." [3] Def.'s Ex. A at 1.

After purchasing the property, the Browns unsuccessfully attempted to ascertain its precise location. Pl.'s Ex. 15 at 10–11. Nevertheless, they continued to pay the taxes assessed on the property. *Id.* at 11. In 1979, because they had moved to California, the Browns granted plaintiff, their niece, a power of attorney to act on their behalf. Pl.'s Supp'l Ex. 2 at 2. Then, on January 6, 1982, the Browns executed a deed conveying to plaintiff part ownership of the property. [4] *Id.* at 1. Prince George's County officials refused to record the deed. Def.'s Ex. F at 6–7.

Since 1979, plaintiff has endeavored to obtain records related to the property. Pl.'s Supp'l Ex. 2 at 2. She searched for records at various libraries, the Maryland Hall of Records, the Orphans' Court, and HUD offices. Compl. 2–3. She also examined Chancery Court records, land records, and title company records. *Id.* at 2. As a result of her searches, plaintiff collected a number of deeds that she contends relate to her property. [5] She also discovered a title insurance policy issued by American Title Insurance Company related to a housing project called Baber Village. *Id.* at 3; Pl.'s Ex. 2 at 1–6.

Baber Village was a "rent-subsidized apartment project in Prince George's County" built in the late–1960s and ultimately demolished in 1980. Def.'s Ex. D at 1; Pl.'s Ex. 15 at 20. The title insurance policy discovered by plaintiff concerned a portion of Parcel C of the Baber Village subdivision titled in the name of Baber Village, Inc. Pl.'s Ex. 2 at 1, 3, 6. The policy, effective December 24, 1969, insured the Prudential Insurance Company and the Secretary of HUD against, among other things, mortgage lien and title defects. *Id.* at 1, 3. Schedule A contained descriptions of the mortgage, assignments, and land covered by the policy. *Id.* at 1–3, 5–6. Schedule B contained a listing of tax liens, charges, easements, and agreements related to the land but excluded from the policy's coverage. [6] *Id.* at 3–4.

---

3. According to a December 31, 1982 letter from an attorney assisting plaintiff, Elbert R. Shore of Bell, Cornelius & Shore, to the Honorable Norman P. Ramsey of the United States District Court for the District of Maryland, "Equity No. 10182" is "a book of tax sales." Pl.'s Ex. 10.

4. The record contains indirect evidence that plaintiff acquired an interest in the property through other means. Information in an October 5, 2000 newspaper article suggests that the Browns conveyed the property to Mr. Brown's brother, Rev. Edward Grant, in 1969 when they moved to California, and that Rev. Grant subsequently deeded the property to plaintiff, his daughter. Def.'s Ex. E. The article alternatively indicates that plaintiff possessed documents showing that the Browns had willed the one-half acre of property to her. *Id.* at 2.

5. The court references some of the deeds in the text. The remaining deeds collected by plaintiff and supplied to the court reflect transactions spanning from the 1910s through the 1960s.

*Transactions in the 1910s and 1920s:* Edward L. Latimer platted a parcel of land owned by Francis Donohue into seven lots in 1912. Pl.'s Ex. 7 at 2; Pl.'s Ex. 8 at 1, 5, 9. On December 2, 1912, Mr. Donohue conveyed lot three to Annie Bennett, Pl.'s Ex. 8 at 5, who then conveyed the lot to George N. Palmer on August 2, 1915, Pl.'s Ex. 9 at 1–2. On August 14, 1915, Mr. Palmer conveyed a parcel of land at the southern end of the lot to Antonie Laurenzi, who then conveyed the parcel to Benjamin L. Gover on September 13, 1925. Pl.'s Ex. 6 at 2. On July 29, 1914, Mr. Donohue conveyed lot four to Mr. Palmer. Pl.'s Ex. 7 at 2; Pl.'s Ex. 8 at 1. Mr. Palmer then conveyed the north half of lot three and all of lot four to Mr. Gover on December 27, 1925. Pl.'s Ex. 7 at 2.

*Transaction in the 1940s:* Robert Finley Truett died on August 16, 1942, leaving 10 1/3 acres of land located on Central Avenue in Seat Pleasant District. Pl.'s Ex. 14 at 3–4. On August 25, 1942, his widow was appointed administratrix of his estate to clear title to the land. *Id.*

*Transactions in the 1960s:* On April 7, 1967, Stones, Inc. conveyed part of the land it acquired from Barbara J. Greer to Webb & Knapp National Corporation. Pl.'s Ex. 4. On that same day, Webb & Knapp National Corporation conveyed back to Stones, Inc. a portion of the land it just acquired. Pl.'s Ex. 5. On May 27, 1968, Max Kay, Harry Kay, and Travis O. Campbell conveyed a parcel of land to Levco, Inc. Pl.'s Ex. 6 at 4–5.

6. Plaintiff alleges that the policy is evidence that American Title Insurance Company did not in-

It appears that Baber Village, Inc. conveyed some or all of the property it owned to HUD on July 19, 1972. Pl.'s Ex. 13 at 2. On June 30, 1975, the Secretary of HUD, Carla A. Hills, conveyed the land that was the subject of the title insurance policy to the Housing Authority of Prince George's County. Compl. 3; Def.'s Ex. B at 1–2. Then, on September 11, 1985, the Secretary of HUD, Samuel R. Pierce, Jr., conveyed Parcel B of the Baber Village subdivision to Central Gardens Associates Limited Partnership. Compl. 3–4; Def.'s Ex. C. The deeds reflecting these conveyances were recorded in the land records of Prince George's County on June 30, 1975, and September 13, 1985, respectively. Def.'s Ex. D at 3; Def.'s Ex. E at 1–2.

Plaintiff contends that Baber Village was built on, or encroached upon, the land deeded to her by her aunt and uncle. Compl. 4. Thus, she contends, the sale of the various parcels of the Baber Village subdivision by the Secretaries of HUD extinguished her "right to own, enjoy or sell" her property. Id. at 1. In effect, plaintiff alleges that the United States took her property without providing just compensation in violation of the Fifth Amendment of the United States Constitution.

## B. Earlier Attempts to Obtain Relief by Plaintiff and Her Family

This lawsuit is not the first attempt by plaintiff or her family to obtain relief for the alleged loss of the one-half acre of property. In 1973, as a result of inquiries by Mr. Brown and his brother, Rev. Grant, the supervisor of assessments for Prince George's County concluded that the property did not actually exist. Pl.'s Supp'l Ex. 3. He explained "that a large parcel including the little tract was bought years ago" and "[a]s surrounding parcels were sold and new surveying was done, it was found that the large parcel was not quite as large as had been assumed." Id. He also indicated that unless the assessed owners—the Browns—formally informed him that the property did not exist, the law prevented him from doing anything other than setting an assessment rate on the property. Id.

In 1976, Rev. Grant sought assistance from his United States congresswoman regarding the property. Pl.'s Ex. 12 at 3. The following year, advised that nothing had come from the initial request for assistance, Rev. Grant's congresswoman requested that his state senator inquire into the possibility of introducing a special bill to provide him relief. Id. at 4; Compl. 3.

Rev. Grant also appears to have commissioned a title search from District Realty Title Insurance Corporation ("District Realty") in late 1978. Pl.'s Ex. 12 at 1. As recited in a December 5, 1978 letter, District Realty informed Rev. Grant that the only property titled in the name of Mr. Gover in 1936—just prior to the initial tax sale of the one-half acre of land at issue—was two lots in Capitol Heights and that neither lot was the property purchased by the Browns at the tax sale.[7] Id. District Realty supplemented its findings in an October 15, 1979 letter to plaintiff. Def.'s Ex. I. In tax sale records for the year 1935, it located an entry indicating that the Govers owned one-half acre of land and containing citations to the land records where the relevant deeds had been recorded. Id. at 1; accord Pl.'s Supp'l Ex. 1. Those deeds described conveyances of 10,373 square feet of land and 14,247 square feet of land. Def.'s Ex. I at 1–2. District Realty further found, however, that this same 24,620 square feet of land was conveyed to John I. Maher on November 11, 1925. Id. at 2.

District Realty's findings were buttressed by the results of an inquiry performed by the Prince George's County Council on plaintiff's request. It appears that sometime in early 1980, plaintiff provided the County Council

---

sure the "low rent project called Baber Village located in Prince George's County, Maryland, District 18 at Cindy Lane and Central Ave. called parcel 'A,' " or that American Title Insurance Company denied title insurance related to the property. Compl. 3–4. However, a plain reading of the policy reflects that certain land titled in the name of Baber Village, Inc. was insured effective December 24, 1969. Pl.'s Ex. 2 at 1–6. Only certain, specified tax liens, charges, easements, and agreements related to the land were excluded from the policy. Id. at 3–4.

7. District Realty explained that Mrs. Gover died in 1926 and that Mr. Gover held a life estate in all of her property. Pl.'s Ex. 12 at 1.

with documents supporting her claim of property ownership. Def.'s Ex. G at 1. As described in a March 5, 1980 memorandum, the County Council requested that its legislative officer examine plaintiff's claim. *Id.* After reviewing plaintiff's documents and searching the land records, the legislative officer determined that the property purportedly purchased by the Browns in 1947 had originally been conveyed to Mr. Gover in two transactions: a September 30, 1925 conveyance of 10,373 square feet of land and an October 1, 1925 conveyance of 14,247 square feet of land. *Id.* He then noted that Mr. Gover conveyed both pieces of land to Mr. Maher and Etta Maher on November 11, 1925. *Id.* Accordingly, the legislative officer concluded that the tax rolls should have been changed to reflect that the titleholders were the Mahers, not the Govers. *Id.* The County Council forwarded these findings to plaintiff on March 17, 1980. *Id.* at 2.

It appears that plaintiff also made inquiries with the United States Department of Justice. In an October 30, 1980 letter to plaintiff, an attorney in the Land Acquisition Section of the Land and Natural Resources Division indicated that he was unable to find anything in their records indicating "that the United States was involved in any condemnation proceeding with regards to this parcel of land." Pl.'s Ex. 13 at 4.

On January 19, 1982, plaintiff and the Browns, acting pro se, filed suit in federal district court against the clerk of the Circuit Court for Prince George's County. Def.'s Ex. J. They alleged, pursuant to 42 U.S.C. § 1983, that the clerk denied them access to "equity proceeding 10182" because of their race. Pl.'s Ex. 15 at 1–3. During the proceedings, Mr. Shore, an attorney, filed certain pleadings on behalf of plaintiff and the Browns. Def.'s Ex. J at 1. In a December 31, 1982 letter, Mr. Shore advised the court "that the relief sought by the plaintiffs was unnecessary since the records they sought to inspect had at all times been open to the public and that the Clerk of the Circuit Court had in no way deprived them of access to the records." *Id.* at 1–2; *accord* Pl.'s Ex. 10. Accordingly, the court granted summary judgment for the defendant on January 10, 1983. Def.'s Ex. J at 2.

On September 17, 1986, plaintiff moved to reopen the federal district court case. *Id.* She sought to reassert her claim against the clerk of court and assert various civil rights claims against Mr. Shore's law firm, the director of Prince George's County's Department of Housing and Community Development, and District Realty. *Id.* The court denied her motion on September 18, 1986. *Id.* at 2–4.

It appears that over ten years later, plaintiff sought the assistance of one of her United States senators, Paul S. Sarbanes. Pl.'s Ex. 12 at 2. On November 23, 1999, HUD, in responding to Senator Sarbanes's request for information, indicated that it was "not aware of any defects in the title or legal description" of the Baber Village property it sold to the Prince George's County Housing Authority "that would support an allegation of encroachment." *Id.*

On September 27, 2000, plaintiff filed a second lawsuit in federal district court, this time alleging that Mr. Shore and his law firm improperly handled her case in violation of 42 U.S.C. § 1983. Def.'s Ex. K. Because 42 U.S.C. § 1983 does not apply to privately retained attorneys, the court dismissed plaintiff's suit on October 6, 2000. *Id.*

While her lawsuit against the attorneys was pending, plaintiff and her allegations concerning the Baber Village property were the subject of an article in a local newspaper. Def.'s Ex. E. The October 5, 2000 article explained the basis of plaintiff's claim:

Duncan says that years ago her father, Rev. Edward Grant, deeded to her a stretch of land just beyond the border of Seat Pleasant and Capitol Heights.... The larger tract of land bordering the property was divided into lots and parcels and sold to various individuals. In the early 1970s, the Department of Housing and Urban Development (HUD) built a group of public housing projects on the land. Duncan claims that some of those complexes were built on her family's property and that the county has systematically denied their claim to the land....

. . . .

... [D]ocuments circulated by the [Prince George's County Redevelopment Authority] at a redevelopment project public hearing ... only listed the county, the authority and private owner Antonio [sic] Laurenzi as property owners.

*Id.* at 1–2. Plaintiff's then-pending lawsuit was mentioned in the article, as was plaintiff's contention that she planned to file another federal lawsuit. *Id.*

Consistent with her representation, plaintiff filed another suit in federal district court on October 20, 2000, naming a state judge, the Prince George's County Executive, the clerk of the Circuit Court for Prince George's County, and the Secretary of HUD as defendants.[8] Def.'s Ex. L at 1. She alleged that the defendants "improperly allowed the Prince George's County Housing Authority to encroach on property which belong[ed] to her without providing her with just compensation" and sought to compel the defendants to investigate her claims and produce relevant documents. *Id.* In a November 1, 2000 opinion, the court treated plaintiff's complaint as a petition for a writ of mandamus. *Id.* It concluded that it lacked jurisdiction to compel the state defendants to provide the requested relief and that plaintiff had not met her burden of proving that a writ of mandamus was appropriate with respect to the federal defendant—the Secretary of HUD. *Id.* at 1–3. Accordingly, in an order accompanying the opinion, the court dismissed plaintiff's suit. Def.'s Ex. M at 1.

Several years later, plaintiff contacted HUD's Office of Inspector General's Hotline, alleging that "the Office of Housing issued false statements and that HUD foreclosed and sold property to the Housing Authority of Prince George's County that encroache[d] on property that [she] own[ed]." Pl.'s Ex. 13 at 2. HUD's Office of General Counsel reviewed plaintiff's complaint and, in a January 29, 2008 memorandum, concluded that she could not "establish that she ha[d] legal or equitable title to the property in question." *Id.* It also noted that "due to the lack of

specificity in the deed conveyed to the Brown[ ]s through the tax sale," it could not "determine what, if any, land [plaintiff] actually ha[d] an interest in, nor the proper location of the land." *Id.* at 3.

In the meantime, development of the Baber Village property moved forward. On March 17, 2008, attorneys for the Villages at Pepper Mill, LLC wrote to the Prince George's County Planning Board seeking reconsideration of a preliminary subdivision plan for a tract of land where Baber Village was once located. Pl.'s Ex. 15 at 19–21. Plaintiff wrote to the planning board on March 28, 2008, indicating that she owned the entire property at issue and requesting that the board delay action for three months while she pursued an appeal of HUD's rejection of her Hotline complaint. Pl.'s Ex. 11 at 1–3.

Plaintiff filed the instant suit on May 12, 2010, and briefing with respect to defendant's motion to dismiss concluded on January 18, 2011.

## II. DISCUSSION

### A. Motions to Dismiss and *Pro Se* Plaintiffs

■ Defendant moves to dismiss plaintiff's complaint pursuant to RCFC 12(b). In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiffs' favor. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). With respect to RCFC 12(b)(1), plaintiffs bear the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds,* 846 F.2d at 747. If the court finds that it

---

8. Plaintiff actually filed four suits, which were consolidated by the court on November 1, 2000.

Def.'s Ex. M at 1.

lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

■ *Pro se* plaintiffs' complaints, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'...." *Hughes v. Rowe*, 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Nevertheless, pro se plaintiffs are not excused from meeting basic jurisdictional requirements. *See Henke*, 60 F.3d at 799 ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, pro se plaintiffs are not excused from their burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction.

## B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

■ The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

■ The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2006). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc). Here, plaintiff alleges a violation of the Fifth Amendment of the United States Constitution, clearly a moneymandating constitutional provision.[9] *See Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that "the 'just compensation' required by the Fifth Amendment has long been recognized to confer upon property owners whose property has been taken for public use the right to recover money damages from the government").

9. In her December 3, 2010 response to defendant's motion to dismiss, plaintiff alleges violations of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. It would be pointless to direct plaintiff to amend her complaint to include these allegations because the Court of Federal Claims lacks jurisdiction over such claims. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995) ("[T]he Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment ... [are not] a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *Blassingame v. United States*, 33 Fed.Cl. 504, 505 (1995) ("Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction."), *aff'd*, 73 F.3d 379 (Fed.Cir.1995).

## C. Statute of Limitations

■ Although the court is empowered to entertain claims arising under the Fifth Amendment, it is prevented from doing so if those claims are barred by the relevant statute of limitations. For claims brought in the Court of Federal Claims, the relevant statute of limitations appears in 28 U.S.C. § 2501 and provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *See also John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 132–35, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (holding that 28 U.S.C. § 2501 is a "special statute of limitations" for claims against the United States that provides an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a case). "A claim first accrues within the meaning of the statute of limitations when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1455 (Fed.Cir.1997) (internal quotation marks omitted). "A claimant under the Fifth Amendment must show that the United States, by some specific action, took a private property interest for a public use without just compensation. Therefore, a claim under the Fifth Amendment accrues when that taking action occurs." *Alliance of Descendants of Tex. Land Grants v. United States,* 37 F.3d 1478, 1481 (Fed.Cir.1994) (citation omitted).

■ Plaintiff filed her complaint in this case on May 12, 2010. Accordingly, to satisfy the six-year statute of limitations, plaintiff must demonstrate that the United States government took a specific action to take her property on or after May 12, 2004.[10] She has not done so. Rather, she alleges that the Secretary of HUD conveyed a parcel of land to the Housing Authority of Prince George's County on June 30, 1975, and another parcel of land to Central Gardens Associates Limited Partnership on September 11, 1985. Neither conveyance occurred within the six-year period before plaintiff filed suit. And, plaintiff has not alleged that the United States government took any other action within that six-year period.

■ Nor has plaintiff alleged facts that would support a suspension of the accrual date for her claim. Notwithstanding the general accrual rule recited above, a "claim only accrues if the plaintiff knew or should have known of the existence of the events fixing the government's liability." *John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1356 (Fed.Cir.2006), *aff'd,* 552 U.S. at 130, 128 S.Ct. 750; *see also Young v. United States,* 529 F.3d 1380, 1385 (Fed.Cir.2008) ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date.").

---

**10.** Although she only names the United States as defendant, plaintiff's allegations implicate parties other than the United States, such as (1) Prince George's County, its agencies, and its employees; (2) title companies and their employees; (3) a private attorney; and (4) Central Gardens Associates Limited Partnership. However, the United States is the only proper defendant in the Court of Federal Claims. *See* 28 U.S.C. § 1498(a)(1) (providing that the Court of Federal Claims has jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as the defendant in the Court of Federal Claims); *Stephenson v. United States,* 58 Fed.Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual."). In other words, the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767 (citations omitted); *accord Vlahakis v. United States,* 215 Ct.Cl. 1018, 1018 (1978) ("The plaintiff's assertions concerning ... state officials and courts are obviously beyond this court's jurisdiction."); *Nat'l City Bank of Evansville v. United States,* 163 F.Supp. 846, 852 (Ct.Cl.1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)); *Moore v. Pub. Defenders Office,* 76 Fed.Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations."). Accordingly, to the extent that plaintiff alleges that parties other than the United States have prevented her from exercising her property rights, this court lacks jurisdiction over those claims.

Thus, the accrual date of a claim is suspended if the government "concealed its acts with the result that [the] plaintiff was unaware of their existence" or if the plaintiff's injury was "'inherently unknowable' at the accrual date." *Japanese War Notes Claimants Ass'n of the Philippines, Inc. v. United States*, 373 F.2d 356, 359 (Ct.Cl.1967). This accrual suspension rule is "strictly and narrowly applied[.]" *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed.Cir.1985), *quoted in Martinez v. United States*, 333 F.3d 1295, 1319 (Fed.Cir.2003) (en banc). Accordingly, "a plaintiff's ignorance of a claim that he should have been aware of is not enough to suspend the accrual of a claim." *Ingrum v. United States*, 560 F.3d 1311, 1314–15 (Fed. Cir.2009).

Plaintiff has not alleged that the United States concealed from her evidence supporting her takings claim or that her takings claim was "inherently unknowable." In fact, the allegations in the complaint and the evidence in the record reflect that plaintiff knew or should have known about HUD's 1975 and 1985 conveyances more than six years before she filed her complaint in this case. First, there is evidence that plaintiff had actual knowledge of the conveyances in 2000. For example, in an October 5, 2000 newspaper article, plaintiff described her allegations that some of the "public housing projects" built by HUD in the early 1970s "were built on her family's property"—property that Prince George's County claimed that it owned. Def.'s Ex. E at 1–2. And, in her October 20, 2000 federal lawsuit, plaintiff alleged that the Secretary of HUD, among others, "improperly allowed the Prince George's County Housing Authority to encroach on property which belong[ed] to her without providing her with just compensation." Def.'s Ex. L at 1.

Second, there is evidence that plaintiff should have known about the conveyances when they occurred. "Real estate transactions are filed for public notice and record." *Bellamy v. United States*, 7 Cl.Ct. 720, 726 (1985); *accord Bogart v. United States*, 531 F.2d 988, 992 (Ct.Cl.1976) ("The purpose of recording a deed of trust is to give notice to everyone of its contents . . . ."). Thus, because the deeds reflecting HUD's 1975 and 1985 conveyances were, at the time of execution, recorded in the land records of Prince George's County and therefore publicly available, it is nearly impossible for plaintiff "to show concealment or that the acts were inherently unknowable." *Bellamy*, 7 Cl.Ct. at 726. In sum, plaintiff has not demonstrated that a suspension of the accrual date of her claim is appropriate. Accordingly, her Fifth Amendment takings claim is barred by the six-year statute of limitations in 28 U.S.C. § 2501.

## D. Application to Proceed *In Forma Pauperis*

■■■ Plaintiff filed, concurrent with her complaint, an application to proceed *in forma pauperis*. She also submitted an apparent amendment to her application with her September 29, 2010 response to defendant's motion to dismiss. Pursuant to 28 U.S.C. § 1915, courts of the United States are permitted to waive filing fees and security under certain circumstances.[11] *See* 28 U.S.C. § 1915(a)(1); *see also Hayes v. United States*, 71 Fed.Cl. 366, 366–67 (2006) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed *in forma pauperis* must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Here, plaintiff has satisfied the first two requirements by listing her assets and declaring that she is unable to pay the filing fee. However, she does not state the nature of her action in her application. Nev-

---

11. While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title twenty-eight of the United States Code, the court has jurisdiction to grant or deny applications to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of 28 U.S.C.

§ 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing the court to, among other things, adjudicate applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915).

ertheless, because her complaint contains a sufficient description of her claim, the court concludes that plaintiff has satisfied all of the statutory requirements.

### III. CONCLUSION

The court is sympathetic to plaintiff's situation. She and her family have spent decades attempting to locate and enjoy the use of the property deeded to the Browns in 1947. Throughout the years, she and her family have been given conflicting information about what happened to the property, and it is apparent that she feels that she and her family have been given the runaround and mistreated due to their race and income. Unfortunately, there is nothing this court can do to grant plaintiff the relief she requests. If the United States did, in fact, take plaintiff's property without just compensation via HUD's 1975 and 1985 conveyances, plaintiff's May 12, 2010 complaint comes too late in the day to permit this court to render such a ruling. Plaintiff's takings claim accrued more than twenty-five years ago, well outside the six-year statute of limitations by which this court is bound.

Because plaintiff's claim is time-barred, the court **GRANTS** defendant's motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and **DISMISSES** plaintiff's complaint for lack of jurisdiction. Plaintiff's application to proceed *in forma pauperis* is **GRANTED** and request for alternative dispute resolution is **DENIED.** The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**